1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    AKEENA SOLAR, INC. and ANDALAY
     SOLAR, INC.,
10                                              No. C 09-05040 JSW

                  Plaintiffs,
11
        v.
12                                              **ORDER GRANTING**
     ZEP SOLAR INC., GLOBAL RESOURCE           **DEFENDANTS' MOTION TO**
13   OPTIONS, INC. dba GROSOLAR, and HIGH      **DISMISS**
     SUN TECHNOLOGY, INC.,
14
                  Defendants.
15   _____/

16

17          Now before the Court is the motion to dismiss for lack of subject matter jurisdiction

18   pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") filed by defendants Zep

19   Solar, Inc. and High Sun Technology, Inc. ("Zep").  This motion is fully briefed and ripe for

20   decision.  The Court finds this motion is suitable for disposition without oral argument.  *See*

21   N.D. Civ. L.R. 7-1(b).  Accordingly, the hearing set for February 12, 2010, is VACATED.

22   Having carefully considered the parties' arguments and the relevant legal authority, the Court

23   hereby GRANTS Zep's motion to dismiss.

24                               **BACKGROUND**

25          Plaintiffs Akeena Solar, Inc. and Andalay Solar, Inc. ("Plaintiffs") filed this patent

26   infringement action against Zep.  Under their first claim, Plaintiffs allege that Zep is infringing

27   their U.S. Patent No. 7,406,800 (the "'800 Patent").  Under their second claim, Plaintiffs seek

28   declaratory judgment that they do not infringe Zep's U.S. Patent No. 7,592,537 (the "'537

     Patent").

**United States District Court**
For the Northern District of California

On September 23, 2009, Plaintiffs' counsel sent a letter to Zep charging Zep with infringement of the '800 Patent and sent a similar letter to Zep's customer, groSolar, two days later. (Declaration of John (Jack) R. West ("West Decl."), Exs. D, E.) Plaintiffs requested a response within five days. (*Id.*, Ex. D.) On September 28, 2009, Zep's C.E.O., Jack West responded with the following email to Barry Cinnamon, President of Akeena and Andalay:

> Though we have not met, it is a small industry and I have heard about and followed your accomplishments over the years, particularly your work at SEIA & CALSEIA. I assume that you've also heard about my work at Light Energy Systems back in the 90's as well as my work at High Sun Engineering over the past decade. I look forward to meeting you in person at some point.
>
> I have received a letter from your attorney indicating that the Andalay system is protected by a US patent. We have our own counsel, and he will respond if needed, but I wanted to reach out to you directly, before things potentially escalate in a way that will not be helpful to either side.
>
> The Zep System is also protected by a US patent. You may not be aware, but I have a recently issued US patent -- #7,592,537 -- which has a priority date of Feb 5, 2004. If you haven't seen this patent yet, please do take a moment to review it. I have attached it for your convenience (it is also readily available on the USPTO website).
>
> Given that we have both been issued patents on similar subject matter, *I would very much like to figure out a way that we can avoid getting bogged down with IP disputes, and instead work together* in a way that promotes the idea of rail-free PV mounting systems--an activity that will surely benefit both of us in the end. Is this something that, after reviewing my patent, you would be willing to discuss?
>
> I'm available Mon & Tues this week to chat on the phone. The best way to reach me is my direct line below.

(*Id.*, Ex. F) (emphasis added.) On September 28, 2009, Zep's attorney also emailed Plaintiffs' counsel, stating that his firm was in the process of evaluating Plaintiffs' claims and that he wanted to bring to his attention the fact that Zep was recently issued the '537 Patent, which has a priority date of February 5, 2004. (Declaration of Barry Cinnamon ("Cinnamon Decl."), Ex. 2.)

On October 6, 2009, West and Cinnamon spoke by telephone. According to Cinnamon, West said that he had been working in the industry for years and that Zep's patent has priority over Plaintiffs' patent. Cinnamon also states that West said that if their companies could not informally resolve their disputes, he would "blow up" Plaintiffs' '800 Patent. (*Id.*, ¶ 9.)

1  Cinnamon further states that West claimed that Zep was very well-financed and had the ability

2  to engage in protracted legal battles if necessary, and that he did not want to sue each other

3  now.  (*Id*.)[1]

4          On October 9, 2009, Cinnamon emailed West asking for the technical information about

5  Zep's system that West had mentioned he would send and asking for a sampling of West's

6  device.  (West Decl., Ex. G.)  West responded that he would be glad to share information with

7  him, but that he thought the fastest way to achieve resolution was to meet and each provide

8  demonstrations of their companies' respective systems.  He proposed a meeting between

9  principals and counsel in which each company would demonstrate their system and explain why

10  their system does not infringe the other company's patent.  (*Id*., Ex. H.)  West further wrote:

> My hope is that each side can successfully convince the other that there are no
> infringement issues and that we can move forward by developing a suitable
> business solution. I recognize that Akeena has valid marketing concerns given
> the presence of a "newcomer" in this space. However, I hope that you will now
> appreciate some key facts: I have been working on this problem for over 10
> years; I have signed, dated, and witnessed inventor's notebooks pre-dating my
> provisional patents; my patents on the subject predate yours; and Zep's legal
> team is ready for a fight if that is what is needed.

16  (*Id*., Ex. H.)

17          Zep now moves to dismiss the claim for declaratory relief on the grounds that this Court

18  lacks subject matter jurisdiction to hear this claim.

19                                    **ANALYSIS**

20  **A.      Legal Standards for a Motion to Dismiss Under Rule 12(b)(1).**

21          A party moving to dismiss under Rule 12(b)(1) may make a facial or a factual attack on

22  jurisdiction.  A facial attack challenges the sufficiency of the jurisdictional allegations in a

23  complaint.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A factual

24  challenge instead "attack[s] the substance of a complaint's jurisdictional allegations despite

25  their formal sufficiency, and in so doing rel[ies] on affidavits or any other evidence properly

---

27          [1] Cinnomon also states that West said that Zep would be aggressive about preserving
   and pursuing its intellectual property rights.  (*Id*.)  However, West filed a declaration in
28  which he contests that he made that statement.  (Reply Declaration of John (Jack) R. West), ¶
   3.)

*United States District Court*
For the Northern District of California

1    before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citation

2    omitted); *accord Safe Air*, 373 F.3d at 1039.  In resolving a factual attack on jurisdiction, the

3    court "need not assume the truthfulness of the plaintiff's allegations."  *Id.* (citation omitted).

4            When "the question of jurisdiction is dependent on the resolution of factual issues going

5    to the merits of an action," a jurisdictional finding of genuinely disputed facts is inappropriate.

6    *Id.* (internal quotations and citations omitted).  "The question of jurisdiction and the merits of

7    an action are intertwined where a statute provides the basis for both the subject matter

8    jurisdiction of the federal court and the plaintiff's substantive claim for relief."  *Id.* (internal

9    quotation and citation omitted).  Notwithstanding this general rule, dismissal for lack of subject

10   matter jurisdiction, even when intertwined with the merits, may be appropriate "when the

11   allegations of the complaint are frivolous."  *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*,

12   594 F.2d 730, 734 (9th Cir. 1979) (citation omitted).

13   **B.      There Is Not An Actual Controversy Based on the '537 Patent.**

14           Zep argues that there is no jurisdiction to hear Plaintiffs' declaratory relief claim against

15   it because there is no case or controversy between them.  The Declaratory Judgment Act

16   authorizes courts to "declare the rights and other legal relations of any interested party seeking

17   such declaration" so long as the declaration is sought "in a case of actual controversy within the

18   Court's jurisdiction."  28 U.S.C. § 2201(a).  The Supreme Court set forth the following standard

19   for jurisdiction over a declaratory relief action:

20           [T]hat the dispute be definite and concrete, touching the legal relations having
             adverse legal interests and that it be real and substantial and admit of specific
21           relief through a decree of a conclusive character, as distinguished from an opinion
             advising what the law would be upon a hypothetical state of facts.
22
     *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 774 n.11 (2007) (citing *Aetna Life Ins. Co.*
23
     *v. Haworth*, 300 U.S. 227, 240 (1937)).
24

25           Thus, in place of the reasonable threat of imminent suit test, the Supreme Court
             require[s] a showing of "whether the facts alleged under all the circumstances
26           show that there is a substantial controversy between parties having adverse legal
             interests of sufficient immediacy and reality to warrant the issuance of a
27           declaratory judgment."

28

United States District Court

For the Northern District of California

*Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 901 (Fed. Cir. 2008) (citing *MedImmune,*127 S.Ct. at 771). The test for declaratory relief jurisdiction is objective; "it is the objective words and actions of the patentee that are controlling." *Hewlett-Packard v. Acceleron LLC*, 587 F.3d 1358, 1363 (Fed. Cir. 2009) (citation omitted).

In *Micron Technology*, the defendant sent the plaintiff, one of four major DRAM manufacturers, several warning letters, strongly suggesting that the plaintiff should license its technology. *Id*. at 899. The defendant filed lawsuits against the other three major DRAM manufacturers, which settled when the manufactures agreed to licenses, and then issued public statements reiterating the defendant's intent to pursue its aggressive licensing strategy. The Federal Circuit found that the defendant was pursuing a systematic licensing and litigation strategy. *Id*. The plaintiff filed a declaratory relief action in the Northern District of California, and the following day, the defendant filed an infringement action against the plaintiff in the Eastern District of Texas. *Id*. at 900. The defendant moved to dismiss the declaratory relief action. The court determined that the parties were really just contesting the location and the right to choose the forum for the inevitable suit. *Id*. at 901-02. Based on this record, the court found that evidence amply supported a real and substantial dispute between the parties. *Id*. at 901.

In *Hewlett-Packard*, the defendant wrote to the plaintiff to call its attention to a patent that the defendant recently acquired, which it described as relating to Blade Servers, the plaintiff's product. The defendant requested that the plaintiff not file suit, and imposed a two-week deadline to respond. *Id*. at 1360, 1362. In a second letter to the plaintiff, the defendant again imposed a two-week deadline and "insisted that if [the plaintiff] did not respond to its original letter by the deadline, it would understand that [the plaintiff] did not 'have anything to say about the *merits of the patent*, or its *relevance to [the plaintiff's] Blade Server products.*'" *Id*. at 1362-63 (emphasis in original). The defendant refused to agree to a 120-day stand-still agreement, or provide a counter proposal or some other reassurance that it would not sue the plaintiff. *Id*. at 1363. As a licensing entity, the defendant received no benefits from its patents without enforcement, and that this added significance to the fact that the defendant refused the request for a mutual stand-still. *Id*. at 1364. The court noted that "*MedImmune* may have

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   lowered the bar for determining declaratory judgment jurisdiction in all patent cases; certainly it

2   did so in the licensor-licensee context." *Id*. at 1362.  Therefore, under the totality of the

3   circumstances, the court found that there was a "definite and concrete" dispute between the

4   parties which provided declaratory judgment jurisdiction. *Id*.

5           Upon consideration of the record, the Court finds this case is distinguishable from

6   *Micron Technology* and *Hewlett-Packard* and that under the totality of the circumstances, there

7   is not a real and substantial dispute between the parties regarding Zep's patent.  Significantly,

8   Zep's communications to Plaintiffs have all been in response to Plaintiffs' accusations of

9   infringement and direct threats of an infringement lawsuit.  Objectively, all of Zep's statements

10  are reasonably read merely as preserving Zep's legal rights, including the right to attack the

11  validity of Plaintiffs' patent and to assert Zep's patent if sued by Plaintiffs.  Specifically, when

12  West told Cinnamon that if they could not resolve Plaintiffs' threats of infringement, Zep would

13  "blow up" Plaintiffs' '800 Patent.  This statement supports the theory that if sued for

14  infringement, Zep would attack the validity of Plaintiffs' patent.  The only statement that gives

15  the Court some pause is West's statement that he did not want to "sue each other now."

16  However, read in context of the rest of West's statements showing a desire to avoid litigation

17  and that Zep was responding to Plaintiffs' direct threats of infringement, the Court finds that

18  this statement is reasonably read to show that West was merely protecting Zep's legal rights.

19  Moreover, the Court finds it significant that, although being sued by Plaintiffs, Zep has not

20  asserted a counter-claim of infringement.  Therefore, the Court finds that the facts asserted

21  under all the circumstances do not "show that there is a substantial controversy between parties

22  having adverse legal interests *of sufficient immediacy and reality* to warrant the issuance of a

23  declaratory judgment." *MedImmune,* 127 S.Ct. at 771 (emphasis added).  Accordingly, the

24  Court grants Zep's motion to dismiss this claim for lack of jurisdiction.

25  ///

26  ///

27  ///

28  ///

6

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Zeps' motion to dismiss Plaintiffs'
declaratory relief claim for lack of jurisdiction.

**IT IS SO ORDERED.**



United States District Court

For the Northern District of California

1    Dated: February 9, 2010

2                                                    _____
                                                     JEFFREY S. WHITE
                                                     UNITED STATES DISTRICT JUDGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28