RODERICK M. THOMPSON (State Bar No. 96192)
  rthompson@fbm.com
JEFFREY M. FISHER (State Bar No. 155284)
  jfisher@fbm.com
DEEPAK GUPTA (State Bar No. 226991)
  dgupta@fbm.com
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

Attorneys for Defendants
ZEP SOLAR, INC., GLOBAL RESOURCE OPTIONS,
INC. and HIGH SUN TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AKEENA SOLAR, INC., a Delaware corporation; and ANDALAY SOLAR, INC., a California corporation,<br><br>               Plaintiffs,<br><br>     vs.<br><br>ZEP SOLAR, INC., a California corporation; GLOBAL RESOURCE OPTIONS, INC. dba GROSOLAR, a Delaware corporation; and HIGH SUN TECHNOLOGY, INC., a California corporation,<br><br>               Defendants. | Case No.  3:09-CV-5040 JSW<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO LIFT STAY**<br><br>Date:      July 1, 2011<br>Time:     9:00 a.m.<br>Courtroom:  11, 19th Floor<br>Judge:   Hon. Jeffrey S. White |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW

25142\2622444.4

1

**TABLE OF CONTENTS**

2

Page

3   I.    INTRODUCTION ........................................................................................... 1

4   II.   PROCEDURAL AND FACTUAL BACKGROUND ....................................... 3

5         A.    Zep Promptly Filed An *Inter Partes* Reexamination At The Outset Of This
                Litigation Resulting In Entry Of A Stay. ........................................................... 3

6         B.    The Reexamination Proceedings Resulted In The PTO Canceling Each and
                Every Claim Under Reexamination In Less Than One Year, Leaving Only
7               Three Claims In The '800 Patent, and Narrowing The Claim Terms .................... 5

8         C.    The PTO Rejected Plaintiffs' Eleventh Hour Attempt To Salvage The
                Invalidated Claims With Sweeping Amendments. ................................................. 7

9         D.    During the Reexamination And Stay, While the Claims of the '800 Patent
                Were Being Repeatedly Rejected By The Examiner, Plaintiffs Continued
10              To Send Out Threatening Letters to Zep and its Licensees. ................................ 8

11        E.    When the PTO Issued Its Notice of Intent To Issue a Reexamination
                Certificate, Zep Informed Plaintiffs That Another *Inter Partes*
12              Reexamination Targeted To The Three Remaining Claims Would Be
                Forthcoming. ...................................................................................................... 10

13        F.    Zep Has Sought A Targeted Reexamination of The Three Remaining
                Claims of the '800 Patent. ............................................................................... 11

14  III.  ARGUMENT ............................................................................................... 12

15        A.    When Asked To Lift a Stay, Courts Typically Apply The Same
                Discretionary Three-Factor Test They Use For Instituting A Stay ..................... 12

16        B.    In View of the Further *Inter Partes* Reexamination Proceedings Targeted
                At the Three Remaining Claims of the '800 Patent and the Speed and
17              Success of the Earlier Reexamination, the Stay Should Remain Intact. .............. 13

18              1.    This Litigation Remains In Its "Early Stages." ....................................... 13

19              2.    Leaving The Stay In Place Will Not "Unduly Prejudice" or
                      "Tactically Disadvantage" Plaintiffs ..................................................... 14

20              3.    A Stay Will Streamline This Case By Eliminating It In Its Entirety
                      Or By Simplifying The Issues ................................................................ 16

21  IV.   CONCLUSION ........................................................................................... 18

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW          - i -          25142\2622444.4

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*ASCII Corp. v. STD Entertainment USA, Inc.,*
844 F. Supp. 1378 (N.D. Cal. 1994) ...................................... 13

*Atlantic Construction Fabrics, Inc. v. Metro-Chem, Inc.,*
2008 U.S. Dist. LEXIS 66409 (W.D. Wa. Aug. 14, 2008)..................... 12

*Atlantic Construction Fabrics, Inc. v. Metrochem, Inc. et al,*
2007 U.S. Dist. LEXIS 77205 (W.D. Wash. Oct. 9, 2007) ............... 13, 14

*Automotive Technologies International, Inc. v. America Honda Motor Co.,*
2009 U.S. Dist. LEXIS 85156 (D. Del. Dec. 21, 2006)..................... 13, 17

*Canady v. Erbe Elektromedizin GmbH,*
271 F. Supp. 2d 64 (D.D.C. 2002) ...................................... 12, 16

*Cellectricon AB and Gyros AB v. Fluxion Biosciences, Inc.,*
2011 U.S. Dist. LEXIS 46634 (N.D. Cal. April 25, 2011) ............... 12, 14

*Gould v. Control Laser Corp.,*
705 F.2d 1340 (Fed. Cir. 1983)...................................... 16

*Ho Keung Tse v. Apple, Inc.,*
2010 U.S. Dist. LEXIS 53875 (N.D. Cal. May 3, 2010) ............... 13, 17

*Methode Elecs., Inc. v. Infineon Techs. Corp.,*
2000 U.S. Dist. LEXIS 20689 (N.D. Cal. Aug. 7, 2000)..................... 14, 15

*Network Appliance Inc. v. Sun Microsystems, Inc.,*
2008 U.S. Dist. LEXIS 76717 (N.D. Cal. 2008)...................... 15

*Ohio Willow Wood Co. v. Alps South Corp.,*
2008 U.S. Dist. LEXIS 99392 (S.D. Ohio 2008)..................... 16, 17

*Pegasus Development Corp. v. DirectTV, Inc.,*
2003 WL 21105073 (D. Del. May 14, 2003)...................... 14, 16

*Sorensen v. Digital Networks North America Inc.,*
No. 07-05568 (JSW) (May 8, 2009) ...................................... 12

*Sorensen v. Lexar Media, Inc.,*
2008 U.S. Dist. LEXIS 87511 (N.D. Cal. 2008)...................... 15

*Southwall Technologies Inc. v. Cardinal IG Co.,*
54 F.3d 1570 (Fed. Cir. 1995)...................................... 6

*Spectrum International, Inc. v. Sterilite Corp.,*
164 F.3d 1372 (Fed. Cir. 1998)...................................... 5

1

## TABLE OF AUTHORITIES

**Page**

2

3

## FEDERAL STATUTES

4

35 U.S.C.
§ 102.................................................................................................................... 11
§ 103.................................................................................................................... 12
§ 305.................................................................................................................... 14
§ 312(a) ................................................................................................................ 11
§ 315(c) ................................................................................................................ 17
§ 317(a) ......................................................................................................... 2, 11, 15

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

- iii -

25142\2622444.4

1   Defendants Zep Solar, Inc., Global Resource Options, Inc. and High Sun Technology, Inc.

2   (collectively "Zep" or "Defendants") hereby oppose Plaintiffs Westinghouse Solar, Inc. (formerly

3   known as Akeena Solar, Inc.) and Andalay Solar, Inc.'s (collectively "Plaintiffs") motion to lift

4   the stay pending *inter partes* reexamination of United States Patent 7,406,800 (the '800 Patent").

5   (*See* April 14, 2010 Order, Dkt. 54 "Stay Order.")

6   **I.   INTRODUCTION**

7   In its April 14 Stay Order, the Court determined that "a stay will simplify the issues and

8   streamline the trial, thereby reducing the burden on, and preserving the resources of both the

9   parties and the Court." (*Id.* at 6:15-16.)  The Court has been proven right.  Indeed, the initial *inter*

10   *partes* reexamination that recently concluded invalidated ***nine of the twelve claims of the '800***

11   ***Patent***.  On June 7, 2011, immediately upon the conclusion of this initial *inter partes*

12   reexamination, Zep initiated a further *inter partes* reexamination targeted at the three remaining

13   claims of the '800 Patent.  (*See* Accompanying Declaration of Larry Johnson in Support of

14   Opposition to Motion to Lift Stay ("Johnson Decl."), ¶ 4.)   This further *inter partes*

15   reexamination is likely to dispense with the need for this litigation in its entirety.

16   Specifically, the initial *inter partes* reexamination invalidated ***each and every claim under***

17   ***reexamination***, including the only independent claim (claim 1) of the '800 Patent.  Notably,

18   claim 1 was the only claim Plaintiffs had contended was infringed prior to the reexamination

19   proceedings.  Plaintiffs further made numerous concessions during the initial reexamination

20   proceedings in attempting to overcome various prior art rejections, further narrowing the scope of

21   the remaining claims of the '800 Patent.  *See* Section II.B below.

22   Although the initial reexamination has now concluded, in view of Plaintiffs' continued

23   infringement threats with respect to the three remaining claims of the '800 Patent, on June 7,

24   2011, Zep filed a further *inter partes* reexamination petition targeted to those claims.  This *inter*

25   *partes* reexamination petition is based on several prior art references which were discovered

26   during the pendency of the initial reexamination petition.  Zep is confident that these newly

27   discovered prior art references – which Plaintiffs have been aware Zep intended to include in a

28   further reexamination petition for months (Declaration of Jack West in Support of Opposition to

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040
JSW                                    - 1 -                              25142\2622444.4

1    Motion to Lift Stay ("West Decl."), ¶ 2) -- will render the three remaining claims invalid.  Zep

2    filed this petition at the earliest opportunity permitted by statute -- upon the official issuance of a

3    reexamination certificate for the '800 Patent.  *See* 35 U.S.C. § 317(a) ("[O]nce an order for *inter*

4    *partes* reexamination of a patent has been issued under section 313, neither the third-party

5    requester nor its privies may file a subsequent request for *inter partes* reexamination of the patent

6    until an *inter partes* reexamination certificate is issued and published under section 316, unless

7    authorized by the Director.").  Accordingly, the rationale for the Court's initial stay order

8    remains:  allowing the PTO to examine the three remaining claims in view of Zep's additional

9    prior art references will significantly streamline, if not eliminate, the basis for this action.

10        This is precisely the type of efficient resolution of validity questions that Congress

11   envisioned the reexamination process would provide.  The results from the initial reexamination

12   proceedings have come at a fraction of the cost of litigation and have avoided wasted and

13   duplicated efforts by the Court and the parties on patent claims that no longer exist.  Moreover,

14   though Plaintiffs opposed Zep's request for a stay arguing that reexamination would take "up to

15   more than eight years" (Dkt. No. 36), the initial reexamination proceedings took less than one

16   year after the PTO granted Zep's reexamination request.

17        Even though Zep gave Plaintiffs notice that it would be seeking a further reexamination

18   on the three remaining claims, Plaintiffs' Motion omits this fact, instead contending that

19   reexamination proceedings as to the '800 Patent are "now completed."  Motion at 3:6. (Dkt. 62,

20   2:7-10.)  Plaintiffs' Motion accordingly appears to be a calculated attempt to lift the stay and

21   reinstitute litigation in order to increase costs for Zep and to escalate Plaintiffs' harassment of

22   Zep's licensees by bringing them in as additional defendants now, before the remaining claims

23   have been reexamined and may soon cease to exist.

24        Given the results and swiftness of the initial reexamination proceedings and the likelihood

25   that the further reexamination will require even less time -- there are only three claims remaining

26   of the '800 Patent -- a stay pending continuing reexamination proceedings should result in

27   minimum prejudice while potentially disposing of this case in its entirety.  The Court should

28   therefore leave the stay in place pending the conclusion of the further *inter partes* reexamination

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW          - 2 -                    25142\2622444.4

proceedings.  At a minimum, the Court should maintain the stay pending the PTO's decision on whether to grant Zep's further reexamination request, which is expected within two to three months.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

### A.     Zep Promptly Filed An *Inter Partes* Reexamination At The Outset Of This Litigation Resulting In Entry Of A Stay.

On October 22, 2009, Plaintiffs brought this action for infringement of the '800 Patent and declaratory judgment of non-infringement of Zep's U.S. Patent No. 7,592,537.  Zep promptly moved for dismissal of the declaratory judgment count on the ground there was no actual controversy.[1]  The Court granted that motion on February 9, 2010.  (Dkt. 29.)

On January 27, 2010, Zep requested an *inter partes* reexamination based on eleven references the PTO had not previously reviewed.  Zep's initial reexamination petition targeted claim 1 – the only independent claim and the only claim Plaintiffs had alleged was infringed at the outset of the action.  Zep's reexamination petition further sought review of claims 2-4 and 7-12.  (Johnson Decl., ¶ 2, Ex. A (corrected reexamination request, April 2, 2010) at 2 ("Reexamination of claims 1 - 4 and 7 - 12 of the '800 patent is requested and believed to be in order.").)  Zep did not originally seek reexamination of claims 5 and 6 of the '800 Patent because (1) Plaintiffs did not previously contend these claims were infringed; and (2) Zep wanted to get its initial reexamination petition on file as soon as possible and accordingly did not take additional time to search for prior art focused on these claims for which there is not even a colorable basis to assert infringement.  (*See* Motion to Stay (Dkt. 24) at 3, n. 5.)[2]

---

[1] As discussed in Zep's Motion to Dismiss, Plaintiffs filed this action without actually looking at Zep's product, even though Zep agreed to show it to Plaintiffs.  (Dkt. 15, (West Decl. On Motion To Dismiss) ¶ 12.)  Plaintiffs' rush to file coincided with the Solar Power International 2009 trade show and enabled Plaintiffs to tarnish Zep just in time for this key industry event where Zep, a startup, was planning to demonstrate its product for the first time. (Dkt. 1, (Complaint) at ¶ 23.)
[2] While all of Plaintiffs infringement claims are devoid of merit, claims 5 and 6 of the '800 Patent require "a plurality of connector sockets," which the '800 Patent describes as relating to the interconnection of +/- cables (*see* '800 Patent, col. 5, ll. 20-34).  The Zep system does not provide any such functionality.  Regardless of the lack of merit of Plaintiffs' infringement  accusations, there will be no need for the Court to consider these issues given that the prior art submitted in the current *inter partes* reexamination will lead to these claims being invalidated.

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW

25142\2622444.4

At the same time it filed its reexamination papers, Zep requested that the Court stay these proceedings to utilize the efficiencies of having the PTO review validity with its specialized technical expertise, and to avoid duplicative litigation and wasted efforts on litigating claims that might later be invalidated or changed.  (Dkt. 24.)  On February 16, 2010, Plaintiffs opposed Zep's stay request arguing that it would impair their ability to obtain time-sensitive government solar incentives, it would last "up to more than eight years," and a stay "cannot be expected to streamline this case or reduce burdens for the future."  (Dkt. 36 at 7:23-26; 9:16-22; 10:14-21; 13:11-12; 14:7-9.)

Zep replied on February 23, 2010, noting:

- Plaintiffs' concerns about an eight year delay were based on an outdated report about reexamination times and a more recent report indicated the PTO was moving much quicker, (Dkt. 43 at 7);
- Plaintiffs' claims of prejudice due to disappearing government solar incentives were speculative and undercut by Plaintiffs' C.E.O. statements in a shareholder call that "there's no doubt in my mind, based on the philosophy we're seeing in terms of customer interest, that *those declining rebates are not affecting the customer economic in any way negatively,*" (*Id.* at 9-10 (emphasis added));
- Plaintiffs' actions had already shown that delay was not a genuine concern since their motive with the lawsuit appeared to be to hang a black cloud over Zep by threatening its licensees and customers, (*Id.* at 10-11); and
- Because Plaintiffs had conceded they intended to *license* the '800 Patent, and therefore were not seeking to exclude others from practicing the patent, monetary damages at the conclusion of the case in the event they could prove infringement would suffice. (*Id.* at 12.)

On April 14, 2010 the Court granted Zep's request for a stay, noting that "Zep promptly filed the request for reexamination and motion to stay in the early stages of litigation," that reexamination times were likely to be faster than the 60-97 months predicted by Plaintiffs, that reexamination is far cheaper than litigation (13x), and that Plaintiffs' argument that solar incentives were disappearing was "pure speculation."[3]  (Stay Order at 3-5.)  The Court noted that a stay would likely simplify the issues and streamline any trial in this action, thereby preserving the resources of the parties and the Court.  The Court specifically noted statistics indicating that

---

[3] Notably, Plaintiffs are no longer even contending in their Motion that solar incentives are disappearing.  The opposite has occurred, as numerous incentives for solar have been extended during the pendency of the stay.  (*See, e.g.,* http://www.treasury.gov/initiatives/recovery/Pages/1603.aspx; http://www.seia.org/cs/news_detail?pressrelease.id=1181.)

*51% of the time reexamination results in all claims being cancelled*. (*Id*. at 6.)

B.   **The Reexamination Proceedings Resulted In The PTO Canceling Each and Every Claim Under Reexamination In Less Than One Year, Leaving Only Three Claims In The '800 Patent, and Narrowing The Claim Terms.**

The reexamination commenced on April 16, 2010, when the PTO granted *inter partes* reexamination on nine of the twelve claims of the '800 Patent.[4]  (Olesek Decl., Ex. A.)  In its first Office Action the PTO rejected four of the nine claims under reexamination.  The Examiner's remarks substantially narrowed the scope of key claim terms.  For example, regarding the "press-fit" limitation, which is found in all claims of the '800 Patent, the Examiner distinguished the Genshorek prior art reference as not disclosing a press-fit, because it has a "barb [that] engages over the lip…." (*Id.*, Ex. B at 7 (internal citations omitted).)   In response, Plaintiffs agreed with the Examiner's narrowing remarks.  (*Id.*, Ex. C at 4 ("Patent Owner thanks the examiner for her well reasoned conclusion in which the patentability of claims 7-9 and 11-12 was confirmed."))

Similarly, Plaintiffs made arguments to overcome the Tomiuchi reference, further confirming the narrow scope of the '800 Patent.  Plaintiffs argued that the "hook" that runs along the "edge" of the horizontal rails disclosed in Tomiuchi and engages with slits on the frame of a solar module does not disclose "coupling the frames of the plurality of solar modules together by inserting each end of each splice into two adjacent solar module frames." (Olesek Decl., Ex. C at 6; Declaration of Deepak Gupta in Support of Opposition to Motion to Lift Stay ("Gupta Decl."), Ex. A, claim 1.)  Plaintiffs also argued that because the hooks of Tomiuchi only join solar module frames together when a "bolt is tightened to press" them together, the hooks do not satisfy the "press-fit coupling" limitation of claim 1.  (*Id.* at 6-7.)

These and other narrowing statements by the Plaintiffs and Examiner during the initial reexamination proceedings will prove helpful for claim construction should this case ever proceed to that stage.  *See e.g.*, *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998) (noting that prosecution history estoppel also applies to statements made during

---

[4] The PTO granted reexamination for all but one of the claims for which Zep had sought reexamination. Though the PTO found no new substantial question of patentability on claim 10, as explained further below, that determination was made without the benefit of Nagao and without the benefit of the newly discovered art Zep has submitted in its current reexamination proceedings.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW

- 5 -

25142\2622444.4

1  reexamination) (*citing Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir.

2  1995)).

3         In its second office action, the PTO rejected all claims under reexamination based

4  primarily on the Nagao reference.  (Olesek Decl., Exs. B and E at 1, 4 ("The indicated

5  allowability of claims 7-9, 11 and 12 is withdrawn in view of the newly discovered reference(s) to

6  Nagao and Rinderer."))  Nagao is highly pertinent prior art to *all* claims of the '800 Patent, but

7  was not considered by the Patent Office in its initial reexamination order, which had found a

8  substantial new question of patentability as to claims 1-4, 7-9 and 11-12, but did not find a

9  substantial new question of patentability as to claim 10.[5]

10        In its second office action, the examiner explained the pertinence of the Nagao reference.

11  Like the '800 Patent, it discloses "a plurality of solar modules…and a plurality of splices for

12  coupling the frames of the plurality of solar modules together by inserting each end of each splice

13  into two adjacent solar module frames…" (claim 1 (emphasis added)). Specifically, Nagao has a

14  *locking member* (splice) that couples solar modules by inserting each end into two adjacent solar

15  module frames:

| Nagao Prior Art (2002) | '800 Patent (2008) |
|---|---|
|  |  |
| Locking Member for Coupling Solar Modules | '800 "Splice" for Coupling Solar Modules |

[5] As discussed below, Zep believes that as soon as the examiner reviews claim 10 in view of Nagao as well as the other newly discovered prior art submitted in the second reexamination proceeding, claim 10 will also be rejected.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW   - 6 -   25142\2622444.4




| Inserted To Couple Solar Modules | Inserted To Couple Solar Modules |

(Gupta Decl., Exs. A ('800 Patent), and B (Nagao).)  Using Nagao in combination with several

other references, the examiner rejected **all** claims of the '800 Patent under reexamination.

(Olesek Decl., Ex. E at 1 ("1-4, 7-9, 11 and 12 are rejected."))

On September 23, 2010, Plaintiffs submitted comments to attempt to distinguish Nagao.

(Olesek Decl., Ex. F.)  On October 25, 2010, Zep submitted rebuttal comments.  (*Id.*, Ex. G.)  On

November 30, the examiner maintained her rejections in view of Nagao and issued an action

closing prosecution.  (*Id.*, Ex. H.)  The examiner uniformly credited Zep's comments, writing at

several points, "[t]he examiner generally agrees with the comments made by the third party

requester" (*id.* at 11, 13, 16, 17, 18) and "for the reasons expressed by the third party request,

patent owner's arguments are not persuasive and the rejection is maintained."  (*Id.* at 13, 14, 16,

17, 19.)

C.      **The PTO Rejected Plaintiffs' Eleventh Hour Attempt To Salvage The
        Invalidated Claims With Sweeping Amendments.**

With only claims 5, 6 and 10 remaining in the '800 Patent, Plaintiffs attempted to make

sweeping revisions to the patent by proposing to amend eleven claims and add eight new claims

by an Amendment filed on December 29, 2010.  (Olesek Decl., Ex. I at 2-4.)  On January 28,

2011, Zep submitted rebuttal comments.  (*Id.*, Ex. J.)  Zep first stated that as a procedural matter,

Plaintiffs had not provided "good and sufficient reasons why the amendment [wa]s necessary and

not earlier presented."  37 C.F.R. § 1.116.  (*Id.* at 3.)  Zep further stated that the newly amended

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW          - 7 -                          25142\2622444.4

1   and added claims were anticipated and obvious in light of a number of references which it had

2   only recently discovered.[6]  As Zep indicated, not only did these references preclude issuance of

3   any new claims, but they also rendered invalid the only claims of the initial patent that remained,

4   *i.e.*, claims 5, 6 and 10, which Plaintiffs had tried to rewrite in independent form.  (*Id.* at 4-18.)

5        On February 2, 2011, the PTO issued a "Right of Appeal Notice" stating that Plaintiffs'

6   attempt to substantially rewrite the claims was procedurally improper.  (Olesek Decl., Ex. K.)

7   The Examiner wrote, "**The proposed amendment of December 29, 2010 is NOT ENTERED**

8   **because the proposed amendment is not compliant with 37 CFR 1.530, 1.951 and 1.116.**"

9   (*Id.* at 3 (emphasis in original).)  Had the PTO permitted Plaintiffs' sweeping revisions to go

10  forward, a period of prosecution would have ensued for an indefinite period.  Instead, the

11  examiner maintained all rejections as set forth in the November 30 action closing prosecution.

12  (*Id.* at 5).

13       The examiner accordingly ***did not*** have an opportunity to consider the new prior art

14  references submitted by Zep.  As explained further below (*see* Section II.E), Zep has submitted

15  these references in the present reexamination request, and is confident they will render the only

16  remaining claims of the '800 Patent invalid.

17       D.   **During the Reexamination And Stay, While the Claims of the '800 Patent**
            **Were Being Repeatedly Rejected By The Examiner, Plaintiffs Continued To**
18          **Send Out Threatening Letters to Zep and its Licensees.**

19       The PTO's rejections of nine out of twelve claims of the '800 Patent covered each and

20  every claim under reexamination, and each and every claim that Plaintiffs ever suggested Zep

21  infringed.  This did not deter Plaintiffs from continuing to send threatening letters to Zep and its

22  licensees and customers, however, even while these rejections were pending.  For example, when

23  Plaintiffs received notice of issuance of another patent, U.S. Patent No. 7,832,157, on

24  December 6, 2010, they sent a threatening letter to Zep.  (Gupta Decl., Ex. C.)  This letter

25  expressly admits that the '157 has "similar claims to the '800 Patent," which as of November 30,

26

---

27  [6] Zep provided a sworn declaration that the references were identified in September of last year
    and translated only in January of this year. (*See e.g.*, *id.* at 5-6.)  Zep therefore could not have
28  included these new prior art references in its initial reexamination request. Zep has raised them
    with the PTO as soon as possible.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW          - 8 -                    25142\2622444.4

2010 had received multiple Office Actions rejecting all claims under reexamination in view of

Nagao and which have now been canceled.  (*Id.*)  Plaintiffs sent a similar letter to Zep licensee

Canadian Solar Inc.  (West Decl., Ex. A.)  Plaintiffs sent a similar letter to Zep licensee UpSolar.

(*Id.*, Ex. B.)  None of these letters even mentioned the reexamination proceedings, which had by

this time determined that all of the claims of the '800 Patent under reexamination – including the

only claim that Plaintiffs had ever asserted was infringed (claim 1) -- were invalid.

        Zep's counsel responded to these letters by writing to Plaintiffs' counsel on January 7,

2011 explaining that in the reexamination, Plaintiff had "now canceled each of the '800 patent

claims that it had alleged were infringed" and asking Plaintiffs to explain how the Zep system

could possibly infringe any remaining claim of the '800 Patent:

> As you are aware, in connection with the ongoing reexamination
> proceedings, Akeena/Andalay has now canceled each of the '800
> patent claims that it had alleged were infringed by the Zep system.
> While there was never any basis to contend that the Zep system
> infringed these claims, there is clearly no basis to threaten Zep or its
> customers and/or licensees with respect to these now non-existent
> claims.
>
> There is similarly no basis to contend that the Zep system infringes
> any claim of the newly issued '157 patent. ***Indeed, it appears that
> these letters are part of a continued campaign by your client to
> harass and intimidate Zep and its customers and/or licensees, and
> to stifle legitimate competition***.
>
> We therefore request that you immediately stop sending out any
> more threatening letters to Zep or its customers and/or licensees.
> Furthermore, we also request that you immediately refrain from
> verbally threatening or intimidating Zep customers and/or licensees.
> ***If you believe there is some legitimate basis to contend there is
> infringement, we would welcome hearing from you***.

(Gupta Decl., Ex. D (emphasis added)).  Plaintiffs' counsel responded stating only that he

"expects the currently-pending litigation to resume once the reexamination certificate for the '800

patent issues," but failed to provide any legitimate grounds for contending that claims 5, 6 or 10

could possibly be infringed.  (*Id.*, Ex. E.)

        On January 19, 2011, counsel for Zep again wrote to Plaintiffs' counsel re-emphasizing

that all previously asserted claims were now canceled and again inquiring as to whether they had

any support for their continuing assertions of infringement as to any surviving claim:

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW                - 9 -                          25142\2622444.4

1    We are writing in response to your January 14 letter.

2    As noted in my January 7 letter, the claims of the '800 patent that
     Akeena/Westinghouse had previously alleged were infringed have
3    now been canceled.  Notwithstanding our request that you explain
     how Akeena/Westinghouse could possibly contend that any of the
4    surviving claims of the '800 patent or the claims of any other
     Akeena/Westinghouse patent read on the Zep system, your January
5    14 letter fails to provide any explanation whatsoever.

6    ***As we requested previously, if you believe there is some legitimate
     basis to contend that the Zep system infringes any surviving claim
7    of any Akeena/Westinghouse patent, please explain your
     contention in detail how so that we can evaluate it***.

8

9    (*Id.*, Ex. F.)  Plaintiffs failed to respond to that letter, and have never explained how the Zep

10   system infringes any surviving claim of the '800 Patent.

11        E.    **When the PTO Issued Its Notice of Intent To Issue a Reexamination
                Certificate, Zep Informed Plaintiffs That Another *Inter Partes* Reexamination**
12              **Targeted To The Three Remaining Claims Would Be Forthcoming.**

13        The PTO issued its Notice of Intent to Issue Reexamination Certificate canceling all

14   claims under reexamination on April 4, 2011, confirming that claims 1-4, 7-9, 11 and 12 were

15   invalid.  (Olesek Decl., Ex. L.)  At that time and in view of Plaintiffs' continued harassment of

16   Zep's licensees, Zep's C.E.O., Jack West, reached out to Plaintiffs' C.E.O., Barry Cinnamon, in

17   an attempt to resolve the parties' disputes.  Although this attempt was unsuccessful, during the

18   course of their April 29, 2011 discussions, Mr. West informed Mr. Cinnamon that Zep intended to

19   file a further reexamination targeted at the three remaining claims of the '800 Patent based on

20   Nagao and the newly discovered references that Zep had submitted in connection with the Action

21   Closing Prosecution.  *See* Section II.C.  As a follow up to that discussion, Mr. West emailed Mr.

22   Cinnamon these prior art references for his review on April 30, 2011.  (West Decl., ¶ 2.)

23        Without responding to Mr. West's email citing the newly discovered art and without

24   meeting and conferring with Zep's counsel, Plaintiffs responded by filing their motion to lift the

25   stay on May 5, 2011.  Accordingly, Plaintiffs' contention in their Motion that the stay should be

26   lifted because "[t]he USPTO has now completed its reexamination" (Dkt. 62, 3:6) flies in the face

27   of their knowledge that Zep intended to file a further *inter partes* reexamination on the remaining

28   claims based on Nagao and these newly discovered prior art references.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW            - 10 -            25142\2622444.4

F.     **Zep Has Sought A Targeted Reexamination of The Three Remaining Claims of the '800 Patent.**

On June 7, 2011, Zep instituted its further reexamination targeted at the three remaining claims of the '800 Patent.  (Johnson Decl., Ex. C.)  This was the first opportunity when Zep could file a further *inter partes* reexamination under the reexamination statute, as an official certificate must issue before another *inter partes* reexamination may be initiated.  *Id.; see also*, 35 U.S.C. § 317(a) ("[O]nce an order for *inter partes* reexamination of a patent has been issued under section 313, neither the third-party requester nor its privies may file a subsequent request for *inter partes* reexamination of the patent until an *inter partes* reexamination certificate is issued and published under section 316, unless authorized by the Director"); Johnson Decl., Ex. B (reexamination certificate issued June 7, 2011).  A decision as to whether the PTO will grant Zep's petition is required within 3 months.  *See* 35 U.S.C. § 312(a).[7]

The current *inter partes* reexamination is based on the Nagao reference, and seven newly discovered references that Zep first became aware of during the pendency of the initial reexamination.[8]  (Johnson Decl., Ex. C, ¶¶ 4-5.)  The seven new references include recently translated German and Japanese prior art that dates as far as back as 1982, over two decades before the claimed priority date of the '800 Patent.  (*Id.*)  These references disclose limitations particular to the remaining claims, including, for example "connector sockets" and "raised features." (*Id.*; Gupta Decl., Ex. A, '800 Patent, claims 5, 6 and 10.)  The present reexamination petition contends that four of the references submitted each independently anticipate all three remaining claims under 35 U.S.C. § 102 and that several combinations of the submitted references render the three remaining claims obvious under 35 U.S.C. § 103.  (Johnson Decl., ¶ 5.)

Zep is confident that these references will render invalid each of the three remaining

---

[7] The first reexamination was ordered within approximately two and a half months of Zep's request.  (*See* Stay Order (request filed on January 27, 2010); Dkt. 57 (reexamination order on April 16, 2010).)

[8] Aside from Nagao and the Garvison '724 patent, which was used previously to satisfy the grounding limitations of the '800 patent claims, none of the submitted references were previously of record in the '800 Patent file history.  (Johnson Decl., ¶ 4.)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW          - 11 -                    25142\2622444.4

1    claims of the '800 Patent.  The PTO of course needs to agree with only one of the numerous

2    invalidity arguments in the present reexamination for all remaining claims to be rejected.

3    Despite being on notice of these references since January 28, 2011, Plaintiffs have never

4    contested the strength of these references.  (Olesek Decl., Ex. J.)

5    **III.    ARGUMENT**

6         Plaintiffs' Motion is based on the premise that reexamination proceedings are concluded

7    as to the '800 Patent.  Plaintiffs are wrong.  As set forth above – and as Plaintiffs were aware

8    before filing their Motion – Zep intended to and now has filed a further petition for *inter partes*

9    reexamination on the three remaining claims of the '800 Patent.  Given the past success and speed

10   of reexamination of the '800 Patent, the benefits of maintaining the stay during the remaining

11   *inter partes* proceedings far outweigh any minimal delay of a continued stay.  As reexamination

12   is continuing, the stay should remain in place.[9]

13        A.    **When Asked To Lift a Stay, Courts Typically Apply The Same Discretionary
               Three-Factor Test They Use For Instituting A Stay.**

14

15        A district court has discretion to lift a stay pending reexamination of a patent.  *See Canady*

16   *v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002) ("The same court that

17   imposes a stay of litigation has the inherent power and discretion to lift the stay.")  A court may

18   lift the stay if the circumstances supporting the stay have changed such that the stay is no longer

19   appropriate.  *See id*. ("When circumstances have changed such that the Court's reasons for

20   imposing the stay no longer exists or are inappropriate, the court may lift the stay.")

21   _____

22   [9] Plaintiffs cite *Cellectricon AB and Gyros AB v. Fluxion Biosciences, Inc.,* 2011 U.S. Dist.
     LEXIS 46634 (N.D. Cal. April 25, 2011), *Atlantic Construction Fabrics, Inc. v. Metro-Chem,
     Inc.*, 2008 U.S. Dist. LEXIS 66409, at **3-4 (W.D. Wa. Aug. 14, 2008) and *Sorensen v. Digital

23   Networks North America Inc.*, No. 07-05568 (JSW) (May 8, 2009) (unopposed request to lift
     stay), ECF No. 73, for the proposition that a stay may be lifted once a Notice of Intent to Issue

24   Reexamination Certificate has issued; *i.e.* the Court need not wait for a formal reexamination
     certificate to issue.  (Motion at 5.)  Even if that general proposition is correct, it has no application

25   here.  Since Plaintiffs filed their Motion, a reexamination certificate issued and Zep immediately
     initiated another targeted reexamination at the earliest opportunity permitted by statute.  As

26   reexamination proceedings are continuing, the survival of the three remaining claims is far from
     certain and the stay should remain in place.  Notably, the portion of *Cellectricon* that Plaintiffs

27   failed to cite held that as to the two patents that were still in reexamination, "[m]ost importantly, a
     temporary stay is likely to simplify the issues" and the court kept the stay in place. *Cellectricon*,

28   2011 U.S. Dist. LEXIS 46634, at *6.  The same result should apply here.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'                - 12 -                                25142\2622444.4
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW

Courts typically apply the same three-factor test to motions to lift a stay as they apply to motions for a stay in the first instance.  They consider:  (1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court.  *See e.g., Atlantic Construction Fabrics, Inc. v. Metrochem, Inc. et al*, 2007 U.S. Dist. LEXIS 77205, at *5 (W.D. Wash. Oct. 9, 2007); *Ho Keung Tse v. Apple, Inc.*, 2010 U.S. Dist. LEXIS 53875, at *4 (N.D. Cal. May 3, 2010).  There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings."  *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).  Plaintiffs have failed to demonstrate that the balance of factors that led the Court to grant the stay in the first place has changed.  Indeed, given the success of the first reexamination, the case for keeping the stay is even stronger now.

B.     **In View of the Further *Inter Partes* Reexamination Proceedings Targeted At the Three Remaining Claims of the '800 Patent and the Speed and Success of the Earlier Reexamination, the Stay Should Remain Intact.**

1.     This Litigation Remains In Its "Early Stages."

There has been no discovery or other activity since this Court granted its stay order on April 14, 2010.  There has been no initial case management conference, no disclosures under the patent local rules, nor have dates been set for Markman or trial.  Courts confronted with comparable circumstances, where a case in its early stages is stayed and subsequent reexaminations or PTO proceedings are yet to run their course, consider the case to still be in its "early stages."  *See Ho Keung Tse*, 2010 U.S. Dist. LEXIS 53875, at *6  (Plaintiff "does not dispute the early status of this case, which has not changed during the stay"); *Automotive Tech. Int'l, Inc. v. Am. Honda Motor Co.*, 2009 U.S. Dist. LEXIS 85156, *6 (D. Del. Dec. 21, 2006) (denying motion to lift where "since the stay has been in place, the parties have not conducted extensive discovery…neither has a fact discovery cut off nor a trial been scheduled."); *Cellectricon*, 2011 U.S. Dist. LEXIS 46634 (maintaining stay during ongoing *inter partes* reexam where "discovery has not started and no trial date has been set," noting benefits of conserving

resources where "both parties are small with relatively few employees and limited resources");

*Atlantic Construction Fabrics, Inc.*, 2007 U.S. Dist. LEXIS 77205, at **5, 8 (denying stay where

"no substantive events have occurred since the institution of the stay . . ." and streamlining

benefits of reexamination outweighed prejudice due to delay).  As the circumstances of this case

have not changed, this factor weighs in favor of maintaining the stay.

> 2.   Leaving The Stay In Place Will Not "Unduly Prejudice" or "Tactically Disadvantage" Plaintiffs.

As this Court has previously noted, granting a stay does not cause undue prejudice when

neither party has invested substantial expense and time in the litigation.  Further, the delay

inherent to the reexamination process does not generally constitute, by itself, undue prejudice.

(Stay Order at 4 (citing *Methode Elecs., Inc. v. Infineon Techs. Corp.,* 2000 U.S. Dist. LEXIS

20689, at *7 (N.D. Cal. Aug. 7, 2000) and *Pegasus Dev. Corp. v. DirectTV, Inc.* 2003 WL

21105073, at *2 (D. Del. May 14, 2003).))  Indeed, some delay of litigation is ***necessary*** to

achieve the thirteen-to-one cost benefits of reexamination.  (*See* Stay Order at 5.)

More fundamentally, based on the speed of the first reexamination, any delay from

reexamination of the three remaining claims should be minimal.  The reexamination statute

provides that "[a]ll reexamination proceedings . . . including any appeal to the Board of Patent

Appeals and Interferences, will be conducted with special dispatch."  35 U.S.C. § 305.  The

progress of the first reexamination, from grant of reexamination in April of 2010 to a Right of

Appeal Notice in February of 2011 – a period of less than one year – shows that the promise of

"special dispatch" is now a reality.  As the present reexamination is even narrower than the first

reexamination – targeted to just three claims instead of nine – it is likely to move even faster.

The initial reexamination proceedings moved far quicker than the 60 to 97 months predicted by

Plaintiffs in opposing Zep's stay request, and are consistent with a recent report indicating that

reexamination speed at the PTO has remarkably improved.  (Defendants' Reply on Motion to

Stay at 7-8 (Dkt. 43); Stay Order at 4:17 - 5:16.)

Plaintiffs' claim of prejudice due to delay is further belied by the fact that they themselves

attempted to make sweeping amendments to the claims of the '800 Patent at the eleventh hour in

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW                - 14 -                                    25142\2622444.4

their Amendment filed on December 29, 2010. (*See* Section II.C, above.)  Had the examiner

permitted these revisions, then the prosecution phase in the first reexamination would have been

indefinitely extended.  In light of Plaintiffs having embraced such potential delay, their claim of

prejudice now rings hollow.[10]

    While Courts also consider evidence of dilatory motives or tactics, such as when a party

unduly delays in seeking reexamination of a patent, *Methode Elecs.*, 2000 U.S. Dist. LEXIS

20689, at *7, this is not a case where reexamination is sought on the eve of trial or after protracted

discovery.  To the contrary, Zep filed its first reexamination promptly after the case was filed, and

has submitted its second reexamination request at the first opportunity permitted by statute –

exactly when the *inter partes* reexamination certificate issued.  35 U.S.C. § 317(a).[11]

Accordingly, there has been no delay by Zep here.

    The substantive, as opposed to tactical, nature of these reexamination proceedings is also

apparent from the fact that reexamination proceedings have already resulted in cancellation of

nine out of twelve claims of the '800 Patent, including the only independent claim of the original

'800 Patent (claim 1).  The second reexamination request is based on the Nagao reference, which

the PTO used to invalidate the nine cancelled claims, as well as several newly discovered

references which Zep raised with the PTO at the earliest possible opportunity.  Accordingly, there

is no basis to contend that Zep is acting with dilatory purpose here.  *See Canady*, 271 F. Supp. 2d

---

[10] Plaintiffs' citations to *Network Appliance Inc. v. Sun Microsystems, Inc.*, 2008 U.S. Dist. LEXIS 76717, at **9-10 (N.D. Cal. 2008) and *Sorensen v. Lexar Media, Inc.* 2008 U.S. Dist. LEXIS 87511, at **2-3 (N.D. Cal. 2008) for the proposition that courts recognize the prejudice due to a lengthy delay are inapposite.  (Motion at 6.)  The *Network Appliance* court relied on early reexamination statistics indicating that "each took 4 to 5 years," and *Sorensen* used statistics from 2007 to predict reexamination would "take up to several years to run its course."  *Network Appliance* at *16; *Sorensen* at *3.  Those statistics are obsolete in light of the recent reforms at the PTO (*see* Stay Order at 5:6-8) and are inconsistent with the speed of the initial reexamination here.  Moreover, the court in *Network Appliance* recognized the special efficiencies of stays in "single patent cases" like this one.  *Id.* at *10.  And, the court stayed proceedings as to the one patent for which "the PTO ha[d] already issued [a]n initial action rejecting all claims," recognizing a stay would "spare the Court and the parties from investing resources into construing and litigating a patent that may likely not survive reexamination." *Id.* at 13.
[11] Zep's current petition is based on the same references that it submitted almost six months ago, on January 28, 2011, in response to Plaintiffs' December 29, 2010 attempt to amend.  Although Zep promptly brought them to the examiner's attention in connection with the initial reexamination proceedings, the examiner declined to consider them at that time due to the procedural defects in Plaintiffs' comments.  (*See* Olesek Decl., Ex. K. at 3.)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW                - 15 -                                      25142\2622444.4

at 77 (refusing to lift stay where sequential merged *ex parte* reexaminations proceedings based on newly discovered art were continuing in the PTO, overruling plaintiffs' objections that "by filing a total of three requests for reexamination the defendants are using PTO proceedings for dilatory purposes," noting that "[g]iven the fact that the defendants' first request was valid, as demonstrated by the PTO's office action, the defendants' position that their subsequent requests were not filed for a dilatory purpose seems reasonable.")

3.     A Stay Will Streamline This Case By Eliminating It In Its Entirety Or By Simplifying The Issues.

In light of the success of Zep's first reexamination of the '800 Patent, it is clear that maintaining the stay pending the current reexamination proceedings will further streamline, if not eliminate, this litigation.  Current statistics show that 95% of reexamination requests are granted, 45% of all *inter partes* reexamination proceedings result in all claims being canceled, and 43% result in claims being changed.  (Gupta Decl., Ex. G.)  Thus, in all likelihood, "waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the Court with expert opinion of the PTO and clarifying the scope of the claims."  *Target Therapeutics*, 33 U.S.P.Q. 2d at 2023; *see also Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983); *Pegasus*, 2003 WL 21105073, at **1-2 (noting the benefits of granting a stay pending reexamination include potentially narrowing the issues, reducing the complexity and length of trial, alleviating discovery problems relating to prior art, and encouraging settlement or even dismissal if the patent is declared invalid).

Given that all nine claims under reexamination were canceled in the first reexamination proceedings, a similar result is likely for the three remaining claims of the '800 Patent.  Courts uniformly accord substantial weight to favorable results of prior reexaminations when deciding whether to keep a stay in place to accommodate subsequent reexams.  For example, in *Ohio Willow Wood Co. v. Alps South Corp.*, 2008 U.S. Dist. LEXIS 99392, at *9 (S.D. Ohio 2008), a defendant had filed sequential requests for reexamination on various claims of the asserted patents and the court stayed proceedings.  Several of the reexaminations resulted in a number of rejections.  After the PTO issued a reexamination certificate on one of the patents, almost four

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW

- 16 -

25142\2622444.4

1   years into the litigation, the court lifted the stay.  However, a few days later the PTO issued

2   another reexamination order on that patent so the court reinstituted the stay.  The Court wrote:

3   "Defendant's record of success with the reexamination statistics and this Court's own experience

4   indicate a notable possibility, arguably even a probability, that at least some of the claims

5   involved in this litigation will either be changed or cancelled."  *Id.* at 9; *see also, Ho Keung Tse*,

6   2010 U.S. Dist. LEXIS 53875, at **11-12 (leaving stay in place where "reexamination has

7   already simplified issues for trial" and discounting prejudice where "Plaintiffs…fails to address

8   the obvious fact that the PTO rejected all but one of his claims . . ."); *Automotive Tech.*, 2009

9   U.S. Dist. LEXIS 85156, at *6 (denying motion to lift where several patents and claims remained

10  in reexamination even though case had already been stayed for two and half years; "all of the

11  claims presently asserted against the defendants stand rejected by the PTO" and it was "highly

12  likely that the reexamination…will significantly affect the court's claim construction, and perhaps

13  simplify the infringement and invalidity issues.")

14      In view of Zep's past results, the pending *inter partes* reexamination targeted to the three

15  remaining claims of the '800 Patent has a high probability of "streamlining" this case to a swift

16  conclusion.  Just as the initial reexamination resulted in cancellation of nine out of twelve claims

17  of the '800 Patent, Nagao along with the newly discovered prior art should similarly result in

18  cancellation of the remaining claims.  Thus, the Court should accord substantial weight to Zep's

19  "record of success with reexamination" and the "probability…that at least some of claims

20  involved in this litigation will either be changed or cancelled."  *Ohio Willow*, 2008 U.S. Dist.

21  LEXIS 99392, at *9.  At the very least, this prior art will have been vetted before the technically

22  trained examiners of the PTO, Zep Solar will be estopped from relying on that specific art in the

23  litigation, *see* 35 U.S.C. § 315(c), and the Court will have the benefit of the PTO's additional

24  guidance on the scope of the claims at issue.

25      The Court should accordingly leave the stay in place pending the outcome of the present

26  reexamination proceedings. The Court can of course continue to monitor the progress of the

27  reexamination proceedings through the regular status reports the parties have been providing

28  every four months.  (*See* Stay Order at 6.)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW     - 17 -     25142\2622444.4

1       At a minimum, the Court should maintain the stay pending the PTO's decision on whether

2   to grant Zep's reexamination request.  That decision is expected within two to three months.  As

3   the Court determined in its Stay Order, "[i]f the PTO denies the petition to reexamine the '800

4   Patent, the parties may move to lift the stay promptly and any delay would be negligible."  *Id.* at

5   6:16-18.  The same result should apply here.

6   **IV.**   **CONCLUSION**

7       For all of the foregoing reasons, Zep respectfully requests that this Court deny Plaintiffs'

8   motion to lift stay to permit resolution of *inter partes* reexamination proceedings for the '800

9   Patent.

10

11   DATED:  June 10, 2011                    FARELLA BRAUN + MARTEL LLP

12

13                                           By:_____/s/_____

14                                              Jeffrey M. Fisher

15                                              Attorneys for Defendants
                                                ZEP SOLAR, HIGH SUN
16                                              TECHNOLOGY, INC. and GLOBAL
                                                RESOURCE OPTIONS, INC.

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO LIFT STAY; CASE NO. 3:09 CV-5040 JSW         - 18 -                    25142\2622444.4